UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :

UNITED STATES OF AMERICA,

                                           :

           - v. -                                     09 Cr. 408 (RWS)

                                           :

ALEXIS GOMEZ,

                                           :

             Defendant.

                                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by its attorney, Preet Bharara, United States

Attorney for the Southern District of New York, Jessica Ortiz, Assistant United States Attorney,

of counsel, respectfully submits this memorandum of law in opposition to the defendant's

motion to suppress evidence recovered by officers of the New York City Police Department

("NYPD") in connection with the defendant's arrest.  The Officers who arrested the defendant

had probable cause to believe he was trespassing, because the defendant was in a park late at

night after the park had closed and, thus, probable cause to arrest him and to search him incident

to arrest.  The defendant has submitted an affidavit in support of his motion that suggests

possible explanations for his conduct, pointing for example, to signage he faults as insufficient.

The defendant has not, however, disputed that he was in the park after it was closed.  He

therefore has raised no issue of material fact as to the probable cause for his arrest or the

propriety of the Officers' search.  Accordingly, the Government respectfully submits that the

defendant's motion should be denied without an evidentiary hearing.[1]

## BACKGROUND

On or about February 2, 2009, at approximately 12:30 a.m., several NYPD officers (collectively, the "Officers") were on routine patrol in a marked NYPD van in Mullaly Park in the Bronx, New York.  (Complaint ("Compl."), attached as Exhibit A, at ¶ 2(A).)  One of the officers ("Officer-1") saw two men, one of whom later was identified as Alexis Gomez, the defendant, walking in the park.  (Compl. ¶ 2(B).)  The Officers got out of their van and stopped the defendant and the other individual to question them about trespassing in the park.  (Compl. ¶ 2(C).)  Officer-1 obtained identification from both men, searched NYPD databases and learned that a warrant was outstanding for Gomez's arrest.  Officer-1 instructed another NYPD officer ("Officer-2") to conduct a protective frisk of the defendant.  (Compl. ¶ 2(D).)  During the protective frisk, Officer-2 unzipped the defendant's coat, touched Gomez's waistband area and felt a hard object.  (Compl. ¶ 3(A).)  Officer-2 believed the hard object to be the butt of a gun.  (Compl. ¶ 3(B).)  Officer-2 told Officer-1 that Officer-2 believed the defendant was carrying a gun and placed the defendant's hands on the van.  (Compl. ¶ 3(C).)  Officer-1 then recovered a Smith & Wesson 9mm handgun from the waistband area of the defendant's pants.  (Compl. ¶ 2(E).)  The defendant then was placed under arrest.  (Compl. ¶ 2(F).)

On February 2, 2009, the defendant was charged in a complaint in New York

---

[1]    "A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact."  United States v. Noble, 07 Cr. 284 (RJS), 2008 WL 140966, *1 (S.D.N.Y. Jan. 11, 2008) (citing United States v. Dewar, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007); United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992)). Here the defendant does not put any material fact in issue nor does the Government seek to rely on additional evidence that is inconsistent with the facts presented in the complaint.

State Supreme Court, Bronx County, with criminal possession of a weapon in the second degree, third degree and fourth degree, criminal trespass in the second degree and third degree, possession of ammunition and trespass.  On or about February 11, 2009, the defendant was charged in a complaint in the Southern District of New York with being a felon-in-possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1).  On April 22, 2009, a grand jury sitting in the Southern District of New York returned a one count Indictment charging the defendant with being a felon-in-possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

The defendant now moves to suppress the gun recovered by Officer-1, arguing that he was walking in a public park without knowledge or notice that he was not lawfully permitted to be there and therefore that the Officers had neither reasonable suspicion nor probable cause to arrest him.  (Def. Br. 1.)  In support of the motion to suppress, defendant filed an affirmation.  In it, he states that on February 2, 2009, "after nightfall," he entered Mullaly Park and was stopped by NYPD officers.  (Gomez Aff. ¶ 2.[2])  The defendant also affirms that the Officers recovered a firearm that had been concealed in his clothing.  (Gomez Aff. ¶ 2.)  Defense counsel's affirmation further states that the defendant was arrested "around midnight in Mullaly Park."  (Thau Aff. ¶ 2.)  Included as exhibits to defense counsel's affirmation are photographs of the entrances and signs posted at the entrances of Mullaly Park,  (Thau Aff., Exhibits A-C), including signs plainly stating that Mullaly Park closes at 10:00 p.m.  (Thau Aff., Ex. B.)  The photographs also show that there is a fence around the perimeter of the park.  (Thau Aff.,

---

[2]     "Gomez Aff." refers to the Affirmation of defendant Alexis Gomez, dated September 16, 2009; "Thau Aff." refers to the affidavit of Roland Thau, Esq., dated September 16, 2009.

Exhibits A-C.)

For the reasons stated below, the Government respectfully submits that the

Officers had reasonable suspicion to detain, and probable cause to arrest, Gomez for trespassing,

in light of the fact that Gomez was in Mullaly Park at midnight, when the park closes at 10:00

p.m.

## ARGUMENT

**A.      No Hearing Is Necessary Because Undisputed Facts Establish That The Officers
         Had Reasonable Suspicion For an Investigatory Stop**

It is well-settled that "[u]nder Terry v. Ohio, 392 U.S. 1 (1968), police may

briefly detain an individual for questioning if they have a reasonable suspicion that criminal

activity is afoot."  United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007); see also United

States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995); United States v. Glover, 957 F.2d 1004, 1008

(2d Cir. 1992).  To justify a Terry stop, "[p]olice 'must be able to point to specific and

articulable facts which, taken together with rational inferences from those facts, reasonably

warrant [the] intrusion [on a citizen's liberty interest].'"  United States v. Elmore, 482 F.3d at

178-79 (alterations in original) (quoting Terry, 392 U.S. at 21).

"Reasonable suspicion" is measured by an objective test; "the 'actual motivations

of the individual officers involved' in the stop 'play no role' in the analysis."  Holeman v. City

of New London, 425 F.3d 184, 190 (2d Cir. 2005) (quoting Whren v. United States, 517 U.S.

806, 813 (1996)).  When assessing whether an officer's suspicion that criminal activity is afoot

was objectively reasonable, a court must consider the "totality of the circumstances" facing the

officer at the time of the stop.  Id. at 179; see United States v. Cortez, 449 U.S. 411, 417 (1981);

see also United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000); United States v. Vargas, 369

F.3d 98, 101 (2d Cir. 2004) ("[T]he officers' subjective intent does not calculate into the analysis of when Vargas was arrested.").  In that analysis, factors that by themselves suggest innocent conduct may add up to reasonable suspicion when viewed as a whole.  See United States v. Arvizu, 534 U.S. 266, 274-75 (2002); see also United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991) ("Conduct as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity.").

Reasonable suspicion is measured from the objective perspective of a trained and experienced law enforcement officer.  The analysis "does not deal with hard certainties, but with probabilities," and properly takes into account that trained law enforcement agents may make observations and draw conclusions that go beyond the capacity of a lay person.  United States v. Cortez, 449 U.S. at 412; United States v. McCargo, 464 F.3d 192, 197 (2d Cir. 2006); United States v. Villegas, 928 F.2d at 517 (suspicion reasonable if conduct appears suspect to trained observer); see also Ornelas v. United States, 517 U.S. 690, 699-700 (1996) (while ultimate review of reasonable suspicion determination is *de novo*, deference should be given to experience of police officers involved).

The threshold for reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard."  United States v. Arvizu, 534 U.S. at 274; Elmore, 482 F.3d at 179 (same).  Specifically, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause [and] can arise from information that is less reliable than that required to show probable cause."  Alabama v. White, 496 U.S. 325, 330 (1990).   It may be based on any of a variety of factors, including, among others, an individual's presence in a high-crime neighborhood and the time of day.

Illinois v. Wardlow, 528 U.S. 119, 124 (2000); United States v. Padilla, No. 06 Cr. 824, 2007

WL 1958894, at *7 (E.D.N.Y. June 29, 2007), aff'd, 548 F.3d 179 (2d Cir. 2008) (finding

reasonable suspicion where encounter occurred in high-crime area; defendant was walking in

suspicious manner in a poorly light area).  In short, "the determination of reasonable suspicion

must be based on common sense judgments and inferences about human behavior."  Wardlow,

528 U.S. at 125.  Specifically, in certain contexts, "sometimes innocuous factors such as the time

of day . . . take on added significance."  Bayless, 201 F.3d at 135 (finding the defendant's

presence on the street at 5:00 a.m. to be among the factors justifying Terry stop); United States v.

McPhatter, 2004 WL 350439, at *2 (E.D.N.Y.  Feb.24, 2004) ("[I]n light of all circumstances,

including  . . . the time of night [approximately 1 a.m.]," officer had reasonable suspicion

justifying Terry stop); Burrell v. Lucas, 1992 WL 336763, at *4 (D.Conn. Oct.14, 1992)

(defendant's presence in the "'middle of the night'. . . in an area where thefts had recently been

reported" was a factor establishing officer's reasonable suspicion for Terry stop).

        Here, as the defense has conceded, the defendant was in Mullaly Park at

midnight, well after the time when the park closed, as is evident from the face of the signs posted

at the park.  (Thau Aff. ¶ 2; Exhibit B.)  The Officers, therefore, had reasonable suspicion to

believe that the defendant was in violation of New York State Penal Law, Section 140.05, which

provides, in part, "[a] person is guilty of trespass when he knowingly enters or remains

unlawfully in or upon premises."[3]  Furthermore, defendant's presence was in violation of the

New York City Department of Parks and Recreation regulations which provide that it is a

---

        [3]        New York State Penal Law, Section 140.00 defines "premise" as including any
real property.  The statute further defines "enter or remain unlawfully" to be when a person "is
not licensed or privileged to do so."

violation to enter and remain in a New York City park without the permission of the

Commissioner when such park is closed to the public and that hours of operation for parks from

6:00 a.m. until 1:00 a.m. unless *other open hours are posted* at any park.  See N.Y. Comp.

Codes. R. & Regs., tit. 56, § 1-03(a)(1) & (a)(3) (emphasis added).

    While a violation of New York Penal Law §140.05 requires that the defendant

have actual knowledge that his presence was prohibited, such knowledge may be imputed to the

defendant where there is evidence of conspicuously posted no trespassing signs.   See People v.

Mackey, 835 N.Y.S.2d 891 (N.Y. Crim. Ct. 2007).  The defendant argues that "no conspicuous

signs limited his then access to the park," yet, he has attached in support of his motion photos of

precisely such signs, i.e. signs posted at the entrances of the park stating that Mullaly Park closes

at 10:00 p.m.[4]  (Def. Br. At 1, 6-7; Thau Aff., Ex. B.)  More importantly, whatever degree of

prominence or visibility the signs enjoyed, the defendant does not contest that: 1) signs were

posted at entrances stating that it closes at 10:00 p.m.; 2) the park was closed at midnight; and 3)

the defendant was arrested in the park around midnight.  (Thau Aff. ¶ 2; Ex. B.)  In these

circumstances, the Officers certainly had reasonable suspicion to believe that a violation of New

York Penal Law §140.05, prohibiting trespass, was occurring.  The defendant has identified no

---

   [4]  Defendant's assertion that the criminal complaint signed by one of the Officers
falsely alleged that the signs indicated "NO TRESPASSING AFTER DUSK" is immaterial.
Whether the signs said "NO TRESPASSING AFTER DUSK" or "This Park Closes at 10PM" is
irrelevant because the defendant does not dispute that the defendant's encounter with the officers
in Mullaly Park occurred at or about midnight.  (Compl. ¶ 2(A); Thau Aff. ¶ 2.)  Defendant's
further assertion that the language on the sign prohibiting unleashed dogs except between the
hours of 9:00 pm and 9:00 am, when the park is open, compelled the conclusion that one could
enter at any time is also easily dismissed.  This language simply provides notice that unleashed
dogs could only be in Mullaly park from 9:00 p.m. to 10:00 p.m., given that the sign made plain
that the park closed at 10:00 p.m.

facts that suggest otherwise.  The Officers needed nothing more to conduct an investigatory stop

and question the defendant.

**B.      No Hearing Is Necessary Because Undisputed Facts Establish That The Officers
          Had Probable Cause To Arrest The Defendant**

A warrantless arrest such as the one in this case is proper if there is "probable

cause when the defendant is put under arrest to believe that an offense has been or is being

committed."  United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987).  Probable cause exists "if the

law enforcement official, on the basis of the totality of the circumstances, has sufficient

knowledge or reasonably trustworthy information to justify a person of reasonable caution in

believing that an offense has been or is being committed by the person to be arrested."  United

States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990) (citing, inter alia, Brinegar v. United States,

338 U.S. 160, 175-76 (1949), and Illinois v. Gates, 462 U.S. 213, 230-32 (1983)).

Probable cause is a "commonsense, nontechnical" concept that is determined by

"the factual and practical considerations of everyday life on which reasonable and prudent men,

not legal technicians, act."  Ornelas v. United States, 517 U.S. 690, 695 (1996) (quotation

omitted).  As the Supreme Court explained in Gates:

> The process [of determining probable cause] does not deal with
> hard certainties, but with probabilities. Long before the law of
> probabilities was articulated as such, practical people formulated
> certain common-sense conclusions about human behavior; jurors
> as factfinders are permitted to do the same – and so are law
> enforcement officers. Finally, the evidence thus collected must be
> seen and weighed not in terms of library analysis by scholars, but
> as understood by those versed in the field of law enforcement.

462 U.S. at 231-32 (quotation omitted).  As a result, "it is clear that only the probability, and not

a prima facie showing, of criminal activity is the standard of probable cause."  Id. at 235

(quotation omitted); see also Hill v. California, 401 U.S. 797, 804 (1971) ("[S]ufficient

probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.");

Cruz, 834 F.2d at 50 (to establish probable cause, "it is not necessary to make a prima facie

showing of criminal activity or to demonstrate that it is more probable than not that a crime has

been or is being committed") (quotation omitted); Maryland v. Pringle, 540 U.S. 366, 371 (2003)

("The probable cause standard is incapable of precise definition or quantification into

percentages because it deals with probabilities . . . . We have stated . . . that [t]he substance of all

the definitions of probable cause is a reasonable ground for belief of guilt.") (internal quotation

marks and citations omitted).

The presence or absence of probable cause must be determined from the totality

of the circumstances.  See Gates, 462 U.S. at 238.  That determination is inherently fact-specific,

and does not lend itself to the formulation or application of specific rules or tests.  Thus, the

Second Circuit has explained that "[p]robable cause is a flexible term. There is no rigid demand

that specific tests be satisfied."  Tenenbaum v. Williams, 193 F.3d 581, 603 (2d Cir. 1999)

(quotations omitted).  Moreover, the information known to the officers at the time need not

appear sufficient to support a conviction, or even be admissible in court.  See Adams v.

Williams, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific

evidence of each element of the offense as would be needed to support a conviction.  Rather, the

court will evaluate generally the circumstances at the time of the arrest to decide if the officer

had probable cause for his action.").

Moreover, "[p]robable cause issues are to be decided on an objective basis by

courts without regard to the subjective beliefs of law enforcement officers, whatever those

beliefs may have been."  Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc);

see also United States v. Scopo, 19 F.3d 777, 783-85 (2d Cir. 1994) (analysis of Fourth

Amendment issues involves "'an objective assessment of the officer's actions in light of the facts

and circumstances confronting him at the time' and not on the officer's actual state of mind at

the time the challenged action was taken") (citations omitted); United States v. Ochs, 595 F.2d

1247, 1256 (2d Cir. 1979) ("[T]he test is what could lawfully be done, not what the policemen

thought the source of their power to be.").  Thus, as the Second Circuit explained in Scopo, so

long as the arresting officer had probable cause to believe an offense was being committed, and

"was authorized by state or municipal law to effect a custodial arrest for the particular offense,

the resulting arrest will not violate the fourth amendment."  19 F.3d at 784.

       The defendant argues that the Officers did not have probable cause to arrest him

for trespassing in Mullaly Park.  This argument is easily dismissed.  As set forth above, the

defendant was trespassing in Mullaly Park after the park had closed in violation of New York

State penal law and New York City park regulations.  In those circumstances, the Officers had

probable cause to believe that an offense of trespassing had been or was being committed.  See

People v. Amuso, 843 N.Y.S.2d 395 (N.Y. App. Div. 2007) (officers had probable cause to

arrest defendant for criminal trespass in park at 3:00 a.m. when the park was closed to the

public);  People v. Medina, 488 N.Y.S.2d 60 (N.Y. App. Div. 1985) (police officers had

probable cause to arrest defendant where the officers observed defendant inside park that was

officially closed and it was reasonable for officers to believe defendant was trespassing in the

park in violation of New York Penal Law § 140.05). [5]

## CONCLUSION

Based on the foregoing authority, the Government submits that the undisputed facts establish that the Officers had reasonable suspicion to conduct an investigatory stop and probable cause to arrest the defendant who was trespassing in Mullaly Park after the park was closed. Accordingly, defendant's motion to suppress should be denied without an evidentiary hearing.

Dated:      New York, New York
            October 26, 2009

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:          /S/
             Jessica Ortiz
             Assistant United States Attorney
             (212) 637-2398

cc:    Counsel of record
      (via ECF)

---

[5] While the defendant's trespassing violation certainly gave the Officers ample probable cause to arrest the defendant, once the Officers learned of the outstanding warrant for the defendant, the Officers had a second basis for probable cause to arrest the defendant.

11

CERTIFICATE OF SERVICE

I, Jessica Ortiz, declare that I am employed in the Office of the United States Attorney for the Southern District of New York, and on October 26, 2009, I caused a copy of the attached Government's Response to Defendant's Motion to Suppress to be served by electronic notification to the following counsel:

Roland Thau, Esq.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. Section 1746.

Dated:       New York, New York
             October 26, 2009

                              /s/ Jessica Ortiz
                              Jessica Ortiz
                              Assistant United States Attorney

12