UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,                        09 Cr. 408

          -against-
                                                 OPINION
ALEXIS GOMEZ

               Defendant
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/20/09
```

A P P E A R A N C E S:

     Attorney for the Government

     PREET BHARARA
     United States Attorney for the
          Southern District of New York
     86 Chambers Street, 3rd Floor
     New York, NY  10007
     By:  Jessica Ortiz, Esq.


     Attorneys for Defendants

     FEDERAL DEFENDERS OF NEW YORK
     52 Duane Street, 10th Floor
     New York, NY  10007
     By:  Roland Thau, Esq.

1

**Sweet, D.J.**

Defendant Alexis Gomez ("Gomez" or the "Defendant") has moved to suppress the gun seized from his person following his arrest by police officers in Mullaly Park in the Bronx, New York, on February 2, 2009, on the grounds that the arrest was without probable cause or reasonable suspicion on charges of trespass.

Upon the facts and conclusions set forth below, Gomez's motion is denied.

## I. PRIOR PROCEEDINGS

Gomez was arrested on February 2, 2009 in the Bronx, New York. On April 22, 2009, he was indicted in the Southern District of New York and charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

The instant motion was heard and marked fully submitted on November 4, 2009.

## II. FACTS

2

The facts which follow are based upon the affidavits and exhibits submitted by the parties in connection with Gomez's motion.

Mullaly Park (the "Park") is located in the Bronx, New York. It is surrounded on all sides by a metal fence except for six large, wide entrances. Posted to the right of each of the entrances is a sign stating, in large font, that "[t]his Park Closes at 10 PM." The sign also prohibits "[e]ntering the park after it is closed" and "[u]nleashed dogs, except in designated areas between the hours of 9pm-9am when the park is open." When approaching an entrance to the Park from certain directions, the sign is partially obscured from view. On the night of the arrest in question, the entrances were not fenced off or otherwise barricaded.

On February 2, 2009, at approximately 12:30 a.m., several officers of the New York Police Department ("NYPD") (collectively, the "Officers") were on routine patrol in the Park. One of the officers ("Officer-1") saw two men, one of whom was later identified as Gomez, walking in the Park. The Officers stopped the Defendant and the other

individual to question them about trespassing in the Park. Officer-1 then directed another NYPD officer ("Officer-2") to conduct a protective frisk of the Defendant, during which a Smith & Wesson 9 mm handgun was found in the waistband area of his pants. Gomez was then placed under arrest.

According to the Government, Officer-1 obtained identification from both men, searched the NYPD database, and learned that a warrant was outstanding for Gomez's arrest prior to his arrest on the night of February 2, 2009. According to Defendant, however, the police did not learn of Gomez's identity and outstanding warrant prior to his arrest and transportation to the precinct. This factual dispute remains unresolved on this record.

### III. PROBABLE CAUSE EXISTED FOR THE ARREST

A warrantless arrest is proper if there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) (citing United States v. Fox, 788 F.2d 905, 907 (2d Cir. 1986)). Probable cause exists "if the law enforcement

4

official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990) (citing Brinegar v. United States, 338 U.S. 160, 175-76 (1949); Illinois v. Gates, 462 U.S. 213, 230-32, 238 (1983)).

Probable cause is a "commonsense, nontechnical" concept that is determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996) (internal quotes and citations omitted). This determination is inherently fact-specific and does not lend itself to the formulation or application of specific rules or tests. See Tenenbaum v. Williams, 193 F.3d 581, 603 (2d Cir. 1999) ("Probable cause is a flexible term. There is no rigid demand that specific tests be satisfied." (internal quotes omitted)). As the Supreme Court explained in Gates:

> The process [of determining probable cause] does
> not deal with hard certainties, but with
> probabilities. Long before the law of

5

> probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same – and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

462 U.S. at 231-32 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)). As a result, "it is clear that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Id. at 235 (internal quotes omitted); see also Maryland v. Pring, 540 U.S. 366, 371 (2003) ("The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities . . . . We have stated . . . that [t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt . . . ." (internal quotes and citations omitted)); Cruz, 834 F.2d at 50 ("In order to establish probable cause, it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed." (internal quotes and citation omitted)).

6

Moreover, the information known to the officers at the time need not appear sufficient to support a conviction, or even be admissible in court. See Adams v. Williams, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action." (internal cite omitted)).

Finally, "[p]robable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc); see also, United States v. Scopo, 19 F.3d 777, 783 (2d Cir. 1994) (observing that the Supreme Court has stressed that the probable cause question requires "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken" (internal quotes and citation omitted)). Thus, as the Second Circuit explained in Scopo,

7

so long as the arresting officer had probable cause to believe an offense was being committed and "was authorized by state or municipal law to effect a custodial arrest for the particular offense, the resulting arrest will not violate the fourth amendment." 19 F.3d at 784.

Defendant does not dispute that he was in the Park after midnight, well after the Park was closed. The Officers, therefore, had probable cause to believe that Defendant was in violation of New York State Penal Law, section 140.05, which provides, in relevant part, that "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." Furthermore, Defendant's presence was in violation of New York City Department of Parks and Recreation regulations which provide that it is a violation to enter and remain in a New York City park without the permission of the Commissioner when such park is closed to the public. See N.Y. Comp. Codes R. & Regs., tit. 56, § 1-03(a)(1) & (a)(3).

While a violation of New York Penal Law § 140.05 requires that the defendant have actual knowledge that his presence was prohibited, such knowledge may be imputed to a defendant where there is evidence of a conspicuously posted

8

no trespassing sign.  Gomez argues that signs at the entrance of the Park were confusing and hidden when approaching the Park from certain directions, and that the Officers knew the signs at the entrances to the Park were insufficiently clear and conspicuous to provide notice that the Park was closed after 10 p.m.  As a result, Defendant argues, the Officers should have known that he could not have possessed the criminal intent required for a violation of New York Penal Law § 140.05 and there could exist no probable cause for his arrest.

While the signs' statement that dogs may be walked in the park "between the hours of 9pm-9am when the park is open" is somewhat confusing in light of the Park's closing time, the fact remains that the signs clearly state, in larger font than the remainder of the signs, "This Park Closes at 10 PM."  Further, although the signs are partially obscured when approaching the Park from certain directions, they are sufficiently obvious to serve as conspicuous notice of the hour after which the Park is closed to the public.  Under these circumstances, the Officers had probable cause to believe that a violation of New York Penal Law § 140.05, prohibiting trespass, was occurring.  See People v. Amuso, 843 N.Y.S.2d 395, 397-98

9

(App. Div. 2007) (officers had probable cause to arrest defendant for criminal trespass in park at 3:00 a.m. when the park was closed to the public); People v. Medina, 488 N.Y.S.2d 60, 61 (App. Div. 1985) (police officers had probable cause to arrest defendant where the officers observed defendant inside park that was officially closed and it was reasonable for officers to believe defendant was trespassing in the park in violation of New York Penal Law § 140.05.).

## IV. CONCLUSION

For the foregoing reasons, Gomez's motion to suppress the seized firearm is denied.

It is so ordered.

New York, NY
November /9 , 2009

ROBERT W. SWEET
U.S.D.J.